**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**LARRY THOMAS BEATY,**

> **Plaintiff,**

> **vs.**                                        **Civ. No. 20-699  JFR**

**KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,**

> **Defendant.**

**MEMORANDUM OPINION AND ORDER[1]**

**THIS MATTER** is before the Court on the Social Security Administrative Record

(Doc. 25)[2] filed December 30, 2020, in connection with Plaintiff's *Memorandum of Law in*

*Support of a Motion to Reverse or Remand Administrative Agency Decision,* filed February 26,

2021.  Doc.  27.  Defendant filed a Response on June 2, 2021.  Doc. 31.  Plaintiff filed a Reply

on June 16, 2021.  Doc. 32.  The Court has jurisdiction to review the Commissioner's final

decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire

record and the applicable law and being fully advised in the premises, the Court finds that

Plaintiff's motion is well taken and shall be **GRANTED**.

## I. Background and Procedural Record

Plaintiff Larry Beaty (Mr. Beaty) alleges that he became disabled on January 2, 2015, at

the age of fifty-six and six months, because of high blood pressure, chronic obstructive

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Doc. 17.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 25), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

pulmonary disorder ("COPD"), diabetes, brain injury, and post-traumatic stress syndrome ("PTSD").  Tr. 68-69, 300.  Mr. Beaty completed high school in 1976.  Tr. 301.  Mr. Beaty worked as a concrete manufacturing plant manager and heavy equipment operator.  Tr. 62, 301, 403.  Mr. Beaty stopped working in 2015 because of his medical problems.  Tr. 201.

On April 11, 2017, Mr. Beaty protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 16, 268-73, 274-79.  On October 12, 2017, Mr. Beaty's applications were denied.  Tr. 66, 67, 68-81, 82-95, 134-37, 138-41.  They were denied again at reconsideration on January 10, 2018.  Tr. 96, 98, 100-14, 115-29, 143-49, 150-56.  Upon Mr. Beaty's request, Administrative Law Judge (ALJ) J. Leland Bentley held a hearing on May 2, 2019.  Tr. 43-65.  Mr. Beaty appeared by telephone at the hearing with non-attorney representative Angie Saltsman.[3]  *Id*.  On June 6, 2019, ALJ Bentley issued an unfavorable decision.  Tr. 13-29.  On May 11, 2020, the Appeals Council issued its decision denying Mr. Beaty's request for review and upholding the ALJ's final decision.  Tr. 1-5.  On July 14, 2020, Mr. Beaty timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.      Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[3] Mr. Beaty is represented in these proceedings by Attorney Francesca MacDowell.  Doc. 1.

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income

disability benefits for adult individuals).  The Social Security Commissioner has adopted the

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria

as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.**     **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley,* 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles

4

have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the

agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ made his decision that Mr. Beaty was not disabled at step five of the sequential

evaluation.  Tr. 28-29.  The ALJ determined that Mr. Beaty met the insured status requirements

of the Social Security Act through December 31, 2019, and that he had not engaged in

substantial gainful activity from his alleged onset date of January 2, 2015.  Tr. 18.  He found that

Mr. Beaty had severe impairments of delayed onset PTSD, major depressive disorder,

hypertension, diabetes, mild arthritis of the hips, and COPD.  Tr. 18.  The ALJ determined,

however, that Mr. Beaty's impairments did not meet or equal in severity any of the listings

described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 19-21.

Accordingly, the ALJ proceeded to step four and found that Mr. Beaty had the residual

functional capacity to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for
> the ability to understand, remember and apply simple routine instructions and
> concentrate and persist for extended periods in order to carry out simple routine
> work tasks with routine supervision; the ability to maintain superficial work
> relationships with others, however, would need to avoid work related contact with
> the general public; the ability to adapt to a routine work setting where changes are
> infrequent and introduced gradually; and avoid concentrated exposure to dust,
> fumes, odors and poorly ventilated areas.

Tr. 20.  The ALJ determined that Mr. Beaty could not perform any of his past relevant work, but

that considering Mr. Beaty's age, education, work experience, and residual functional capacity,

there are jobs that exist in significant numbers in the national economy that he can perform.[5]  Tr. 27-29.  The ALJ, therefore, concluded that Mr. Beaty was not disabled.  Tr. 28-29.

In support of his Motion, Mr. Beaty argues that (1) the ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of Agency consultant Dr. Fishburn, and came up with an RFC supported by no medical evidence; (2) the ALJ's subjective complaint analysis is not supported by substantial evidence because he failed to provide a sufficient and accurate discussion of Mr. Beaty's subjective complaints; and (3) the ALJ's step five finding contains error of law.  Doc. 27.

For the reasons discussed below, the Court finds that the ALJ failed to provide a legitimate explanation for rejecting opinion evidence related to Mr. Beaty's ability to do work-related physical activities and the RFC fails to account for Mr. Beaty's walking limitations.  As such, this case requires remand.

A.    **Relevant Medical Evidence**

1.    **Barbara Kaneski, CNP**

On April 27, 2016, Mr. Beaty presented to Barbara Kaneski, CNP, to establish care.  Tr. 365-70.  Mr. Beaty's reported problems included tooth decay, hives, hypoglycemic disorder, hypertension, seasonal nasal allergies, hemorrhoids, anxiety, depression, smoking, and alcohol abuse.  Tr. 365.  Mr. Beaty reported daily depression and hopelessness, with little pleasure in doing things.  Tr. 366.  CNP Kaneski noted elevated blood pressure and an otherwise normal physical exam.  Tr. 366-67.  She also noted that Mr. Beaty had scored 15 on the PHQ-9 Patient

---

[5] The vocational expert testified that Mr. Beaty would be able to perform the requirements of representative occupations such as a Kitchen Helper, DOT #318-687-010, which is performed at the medium exertional level with an SVP of 2 (281,000 in national economy); a Meat Clerk, DOT #222-684-010, which is performed at the medium exertional level with an SVP of 2 (76,000); and a Hospital Food Service Worker, DOT #319.677-014, which is performed at the medium exertional level with an SVP of 2 (77,000).  Tr. 28.

Health Questionnaire reflecting moderately severe depression.  Tr. 368.  CNP Kaneski assessed (1) essential hypertension; (2) hypoglycemia; and (3) other depressive episodes.  Tr. 368-69. CNP Kaneski prescribed Hydrochlorothiazide and Venlafaxine and ordered a lipid panel.  Tr. 369.  She encouraged Mr. Beaty to eat a healthy well balanced diet, to increase his activity to 30-60 minutes a day, 3-5 times per week, and to engage in weight bearing exercises.  *Id.*

On May 16, 2016, Mr. Beaty returned to see CNP Kaneski in follow up of his lab work. Tr. 371-75.  CNP Kaneski added diagnoses of (1) type 2 diabetes mellitus without complication and without long-term use of insulin; and (2) mixed hyperlipidemia.  Tr. 374.  CNP Kaneski prescribed additional medications of Lisinopril and Metformin.  Tr. 375.

On October 24, 2016, Mr. Beaty reported abdominal and left hip pain.  Tr. 376-81. Mr. Beaty stated that the hip pain had started two weeks earlier, occurred constantly, and was worsening.  Tr. 376.  He told CNP Kaneski that the pain was aggravated by active movement, prolonged standing and standing generally.  *Id.*  Mr. Beaty also reported that he had tripped over his cat injuring his back and was experiencing left sided rib pain.  Tr. 380.  CNP Kaneski diagnosed sciatica on left side along with left-sided rib pain and prescribed a Medrol dose pack. Tr. 380.  She noted that Mr. Beaty declined having an x-ray.  *Id.*  CNP Kaneski also diagnosed anxiety and prescribed Buspirone.  *Id.*  Last, CNP Kaneski administered an EKG based on Mr. Beaty's reports of heart palpitations.  Tr. 380-81.  The EKG showed no irregularities.  *Id.*

On November 21, 2016, Mr. Beaty saw CNP Kaneski in follow up of his hip pain and hypertension.  Tr. 382-86.  CNP Kaneski made certain medication adjustments and encouraged Mr. Beaty to walk 10-15 minutes daily and add weight bearing exercises.  Tr. 385.

2.      **Jovanna Ochoa, CNP**

On November 8, 2017, Mr. Beaty presented to Jovanna Ochoa, CNP, to establish care.
Tr. 408-12.  He reported hypertension and diabetes, both of which were currently stable.  Tr.
408.  Mr. Beaty reported fatigue, difficulty initiating sleep, and feeling depressed.  Tr. 409.  CNP
Ochoa noted a mostly normal physical exam and that the PHQ-9 Patient Health Questionnaire
indicated mild depression.  Tr. 410-11.  CNP Ochoa noted under "diabetic foot screen" that
Mr. Beaty's foot evaluation was normal, but that the Monofilament Exam was abnormal.  Tr.
410.   In particular, she noted that Mr. Beaty's vibratory sense was impaired on the right and
left.  *Id.*  CNP Ochoa assessed (1) hypertension, (2) type 2 diabetes mellitus without
complication and without long-term use of insulin; and (3) arthritis pain.  Tr. 411.  She made
certain medication adjustments, including prescribing Benazepril and Sulindac.  Tr. 411-12.

On March 6, 2018, Mr. Beaty returned to CNP Ochoa with complaints of hypertension
and back pain.  Tr. 428-32.  She noted that Mr. Beaty's hypertension was stable, although his
blood pressure was elevated during the visit and treated with Clonipine.  Tr. 428, 431.   CNP
Ochoa noted an otherwise normal physical exam.  Tr. 430-31.  She prescribed Baclofen,
Nabumentone, warm compresses, and stretches for Mr. Beaty's pain.  Tr. 431.

On April 18, 2018, CNP Ochoa noted that Mr. Beaty's hypertension was improving.  Tr.
433.  Mr. Beaty reported a change in appetite, difficulty initiating sleep, and depression.  Tr. 434.
CNP Ochoa noted a normal physical exam and that the PHQ-9 Patient Health Questionnaire
indicated mild depression.  Tr. 435.  CNP Ochoa made some medication adjustments and
prescribed Amitriptyline for sleep.  Tr. 436.  She encouraged Mr. Beaty to increase his daily
activity to 20-30 minutes.  *Id.*

On June 29, 2018, Mr. Beaty saw CNP Ochoa to establish care at her new clinic and to follow up on his blood pressure.  Tr. 443-47.  Mr. Beaty reported generalized pain in his back, neck, feet and hands, and some abdominal discomfort and irritation.  Tr. 443.  Mr. Beaty also reported dental problems, occasional dizziness associated with Metformin, and a depressed mood.  Tr. 445.  CNP Ochoa indicated a normal physical exam.  *Id.*  CNP Ochoa assessed essential hypertension, dyspepsia, prediabetes, hyperlipidemia, alcoholism, joint pain, and dental abscesses.  Tr. 446.  She made certain medication adjustments, encouraged a low-cholesterol, low-fat diet, instructed Mr. Beaty to increase his activity as tolerated to 20-30 minutes daily, and advised Mr. Beaty that his alcohol consumption was likely causing increased pain in his joints. *Id.*

On January 8, 2019, Mr. Beaty presented to CNP Ochoa.  Tr. 447-51.  Mr. Beaty reported having fallen approximately one week ago and bruising his left hip.  Tr. 447.  Mr. Beaty also reported that he had not seen a dentist for his abscesses and caries and that he had been out of his blood pressure medication for approximately one month.  *Id.*  Mr. Beaty complained of fatigue, joint pain, and anxiety.  Tr. 449.  On physical exam CNP Ochoa noted dental abscesses and caries present and decreased range and motion and strength in his left hip.  *Id.*  CNP Ochoa ordered x-rays of his hip/pelvis.  Tr. 450.  The x-rays demonstrated mild osteoarthritis, diffuse atherosclerosis of the hips, and no fractures.  Tr. 451-452.

### 3.    Carolina Perry, M.D.

On May 25, 2018, Mr. Beaty presented to Carolina Perry, M.D., complaining of hypertension and broken ribs. Tr. 437.  Mr. Beaty also complained of shortness of breath, chest pain and joint pain.  Tr. 438.  On physical exam, Dr. Perry indicated left sided chest wall tenderness.  Tr. 439.  Dr. Perry assessed left sided rib pain and "white coat" hypertension.  *Id.*

She prescribed Tramadol for pain and instructed Mr. Beaty to measure his blood pressure at home and a keep a log that she could review.  *Id.*

### 4.   <u>Steven Fishburn, M.D.</u>

On August 19, 2017, Mr. Beaty presented to consultative medical examiner Steven Fishburn, M.D.  Tr. 395-400.  Mr. Beaty reported alleged impairments of hypertension, COPD, diabetes, brain injury, and anxiety disorder.  Tr. 395.  Mr. Beaty reported that his blood pressure was untreated and that he does not use medications.  *Id.*  Mr. Beaty reported that he was diagnosed with COPD by his primary care physician approximately six months ago, and that he has shortness of breath multiple times a day, chest pain, and sometimes coughs up blood.  *Id.*  Mr. Beaty reported a six-month history of diabetes for which he does not take insulin or medication.  *Id.*  Mr. Beaty stated that he experiences nausea and vomiting, has blood in his urine and stool, has pain in his head, and has numbness in his hands and feet.  *Id.*  Mr. Beaty also stated that he has anxiety and panic attacks.  *Id.*  Mr. Beaty reported that he does not like and avoids going to the doctor.  *Id.*  Mr. Beaty reported a 30-year history of smoking a pack of cigarettes per day.  *Id.*  Mr. Beaty reported heavy consumption of alcohol.  Tr. 396.

Mr. Beaty reported that he has difficulty standing for more than 5-15 minutes, is able to a walk a block on level ground, and is able to feed and dress himself.  Tr. 396.  Mr. Beaty reported that he has difficulty lifting more than 5-10 pounds, and that he can engage in driving, sweeping, mopping, vacuuming, cooking, doing dishes, or shopping for no more than 5-15 minutes at a time.  Tr. 396-97.  Mr. Beaty reported that he is unable to climb more than one flight of stairs and cannot do any yardwork.  Tr. 397.

Dr. Fishburn observed on exam that Mr. Beaty was able to get up and out of a chair without difficulty; was able to get on and off the examination table without difficulty; ambulated

without difficulty and without an assistive device; and had a normal gait.  Tr. 397.  Dr. Fishburn

noted on physical exam, *inter alia,* that Mr. Beaty had missing teeth; his lungs were clear with no

rales, wheezes or rhonchi with no evidence of shortness of breath; and is heart, abdomen, spine

and extremities were normal.  Tr. 398.  Dr. Fishburn noted that straight leg raising exam was

normal, that Mr. Beaty could walk on his toes, walk on his heels, squat to the floor and recover,

perform tandem heel walking, and was able to bend over and touch his toes.  *Id.*  Dr. Fishburn

noted normal grip strength and normal fine and gross manipulative skills in both hands.  Tr. 399.

Dr. Fishburn noted on neurological exam that Mr. Beaty exhibited abnormal mentation and had a

"panic attack" prior to the start of the exam.  *Id.*  Dr. Fishburn noted good motor strength, but

that Mr. Beaty had decreased sensation to vibration and temperature at the right distal hand and

the bilateral lower extremities/feet.  *Id.*

  Dr. Fishburn's impressions were there was no sign of physical limitations based on

Mr. Beaty's hypertension; that Mr. Beaty's lungs were clear; that Mr. Beaty had no physical

limitations based on alleged "brain injury"; and that Mr. Beaty's decreased lower extremity

sensation would make occupations requiring walking long distances difficult.  Tr. 399.

Dr. Fishburn recommended that Mr. Beaty have formal psychiatric testing.  *Id.*  Dr. Fishburn

concluded that

> [b]ased on the available medical history and objective clinical findings, this
> claimant has limitations.  They are as follows:  The claimant has limitation in
> walking and is able to walk frequently in an 8 hour work day.  The claimant may
> have limitations in mentation.  The claimant ambulates without difficulty and
> without assistive device.

Tr. 400.

  The ALJ found Dr. Fishburn's assessed limitations unpersuasive.  Tr. 26.

5.      **Carl B. Adams, Ph.D.**

On September 7, 2017, Mr. Beaty presented to consultative psychological examiner

Carl B. Adams, Ph.D., for a mental status examination.  Tr. 402-05.  Mr. Beaty reported a history

of hypertension, COPD, diabetes, brain injury, and anxiety.  Tr. 402.  Dr. Adams observed that

Mr. Beaty was uncomfortable throughout the evaluation and tended to avoid eye contact most of

the time.  *Id.*  He noted that Mr. Beaty was able to pay attention and could concentrate, but was

frequently distracted, seemed lost in thought, and complained of having thoughts and distant

memories coming back since his wife died in 2009.  *Id.*  Dr. Adams noted that Mr. Beaty was not

in therapy, does not have a regular primary care physician, and reported not trusting doctors

because they "killed his wife."  *Id.*  Dr. Adams noted that Mr. Beaty was oriented times three;

that his long and short-term memory was in the low average range; that he was a reasonably

good historian, but reflected on past disturbing memories; that his insight was grossly intact; and

that his judgment was fair.  Tr. 402.

Dr. Adams took personal, educational, vocational, marital and medical histories.  Tr. 403-

04.  Dr. Adams noted that Mr. Beaty lives in a 2-story house on a cattle ranch owned by his

family.  Tr. 404.  Dr. Adams noted that Mr. Beaty reported having ten cattle which he cares for

on the ranch.  *Id.*  Mr. Beaty also reported that he takes his cousin's children to school and

spends time on the ranch.  *Id.*  Mr. Beaty stated that he does not sleep well and resists going to

sleep because of nightmares.  *Id.*

Dr. Adams made Axis I diagnoses of delayed onset post-traumatic stress disorder,

chronic, moderate; major depressive disorder; alcohol abuse and dependence disorder.  Tr. 404.

Dr. Adams assessed a GAF score of 50-55.[6]  Dr. Adams assessed that Mr. Beaty

---

[6] The GAF is a subjective determination based on a scale of 100 to 1 of a "clinician's judgment of the individual's overall level of functioning."  *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed.

has no limitations with detailed or short and simple instructions, moderate limitations with concentration and task persistence, and moderate to severe limitations interacting with public.  He has moderate to severe psychological limitations adapting to changes.  He has a history of alcohol abuse.  He is competent to manage his own finances.

Tr. 404.

The ALJ found Dr. Adam's assessed limitations persuasive.  Tr. 27.

### 6.    Jeanine Kwun, M.D.

On September 26, 2017, nonexamining State agency medical consultant Jeanine Kwun, M.D., reviewed the medical evidence record at the initial level of review.   Tr. 73, 87.  She determined that Mr. Beaty's alleged physical impairments were non-severe.  *Id.*

The ALJ found Dr. Kwun's determination unpersuasive.  Tr. 26.

### 7.    Scott Walker, Ph.D.

On October 10, 2017, nonexamining State agency psychological consultant Scott Walker, Ph.D., reviewed the medical evidence record at the initial level of review.  Tr. 74-75, 77-78, 88-89, 91-92.  Dr. Walker prepared a Psychiatric Review Technique ("PRT")[7] and rated the degree of Mr. Beaty's functional limitation in the area of understanding, remembering or applying information as *moderate*; the area of interacting with others as *moderate*, in the area of maintaining concentration, persistent and pace as *moderate*, and in the area of adaptation as

---

2000) at 32.  A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).  *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 34. A GAF score of 51-60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers).  *Id.* at 34.

[7] "The psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

*moderate*.  Tr. 74-75, 88-89.  Dr. Walker also prepared a Mental Residual Functional Capacity Assessment ("MRFCA")[8] in which he found in Section I that Mr. Beaty had *moderate limitations* in his ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (7) respond appropriately to changes in the work setting; (8) be aware of normal hazards and take appropriate precautions; (9) travel in unfamiliar places or use public transportation; and (10) set realistic goals or make plans independently of others.  Tr. 77-78, 91-92.

In Section III, Dr. Walker assessed that

the claimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact superficially with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

Tr. 78, 92.

The ALJ found Dr. Walker's assessed limitations persuasive.  Tr. 26.

---

[8] The MRFCA form instructions explain: "The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion.  This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation).  Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box."  Tr. 75.  Case law discussing "Section I" and "Section III" therefore remains relevant.

### 8.   **David Coffman, M.D.**

On January 10, 2018, nonexamining State agency medical consultant David Coffman, M.D., reviewed the medical evidence record at reconsideration.  Tr. 105-06, 120-21.  Dr. Coffman determined that Mr. Beaty was "physical non-severe."  Tr. 106, 121.

The ALJ found Dr. Coffman's determination unpersuasive.  Tr. 26.

### 9.   **Stephen Scott. Ph.D.**

On January 8, 2018, nonexamining State agency psychological consultant Stephen Scott, Ph.D., reviewed the medical evidence record at reconsideration.  Tr. 107-08, 110-11, 122-23, 125-26.  Dr. Scott prepared a PRT and rated the degree of Mr. Beaty's functional limitation in the area of understanding, remembering or applying information as *moderate*; the area of interacting with others as *moderate*, in the area of maintaining concentration, persistent and pace as *moderate*, and in the area of adaptation as *mild*.  Tr. 107-08, 122-23.  Dr. Scott also prepared a MRFCA in which he found in Section I that Mr. Beaty was moderately limited in his ability to understand and remember detailed instructions.  Tr. 110-11, 125-26.  He also found that Mr. Beaty was markedly limited in his ability to carry out detailed instructions and interact appropriately with the general public.  *Id.*

In Section III, Dr. Scott assessed that

claimant can understand, remember, and carry out simple instructions with routine supervision.  Claimant can relate to supervision and a limited number of coworkers on a superficial work basis.  Claimant cannot effectively relate to the general public. Claimant can adapt to work environment.

*Id.*

The ALJ found Dr. Scott's assessed limitations persuasive.

B.   <u>Legal Standard</u>

Assessing a claimant's RFC is an administrative determination left solely to the

Commissioner "based on the entire case record, including objective medical findings and the

credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71

(10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law

judge hearing level or at the Appeals Council review level, the administrative law judge or the

administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual

functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an

administrative finding).[9]  In assessing a claimant's RFC, the ALJ must consider the combined

effect of all of the claimant's medically determinable impairments, and review all of the

evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R.

§§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source

opinions and give good reasons for the weight accorded to a treating physician's opinion.  20

C.F.R. §§ 404.1527(b), 416.927(b)[10]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC

assessment conflicts with an opinion from a medical source, the ALJ must explain why the

opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC

assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts . . . and nonmedical evidence."  *Wells*, 727 F.3d at 1065

(quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative

discussion describing how the evidence supports each conclusion with citations to specific

---

[9] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

[10] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

### C. **The ALJ's Explanation for Rejecting Dr. Fishburn's Assessed Limitation Regarding Mr. Beaty's Ability to Walk Is Not Supported by Substantial Evidence**

The ALJ found Dr. Fishburn's opinion to be unpersuasive with regard to his assessment that Mr. Beaty would be limited to only frequently walking in an eight-hour workday.  Tr. 26. The ALJ explained that

> [i]ndeed, I have limited the claimant to a medium exertional level based on his combined impairments.[11]  A medium exertional level mandates standing or walking for 6 hours in an 8 hour workday.  The examiner's opinion, based on his definition of "frequently" would allow the claimant to stand or walk for no more than approximately 2.67 to 5.33 hours in a work day.  While the higher end of that category is conspicuously close to medium exertional level, the lower end is considerably lesser.  Even still, I find the assessment for 5.33 hours would be somewhat inconsistent with the examiner's own findings that claimant ambulated without difficulty or assistive device, had normal gait, could heel to walk [sic], could tandem walk, had normal strength and normal range of motion.  While the claimant did have some decreased sensation in his lower extremities, it does not appear, from the exam, that it caused him difficulties with walking.  Instead, I think limiting the claimant exertionally to a medium level adequately addresses all of his impairments and the combined nature as noted above. Accordingly, having found the opinion is not supported by his own findings or other objective observations on exam, I find this opinion to be unpersuasive.

Tr. 26.

Mr. Beaty argues that the ALJ's RFC assessing that Mr. Beaty could perform medium exertional level work is unsupported because the ALJ failed to provide a legitimate explanation

---

[11] The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. . . .  In most medium jobs, being on one's feet for most of the workday is critical.  SSR 83-10, 1983 WL 31251, *7.

17

for rejecting Dr. Fishburn's assessed limitation regarding Mr. Beaty's ability to walk.  Doc. 27 at

8-11.  In particular, Mr. Beaty asserts that on physical exam Dr. Fishburn tested and noted that

Mr. Beaty had abnormal and decreased sensation to vibration and temperature at the right distal

hand, bilateral lower extremities, and in the bilateral feet.  *Id.*  Based on these objective findings,

Dr. Fishburn assessed that Mr. Beaty should be limited to walking "frequently," *i.e.,* from one-

third to two-thirds of an eight-hour workday or 2.67 to 5.33 hours.  *Id.*  Mr. Beaty argues that

despite the consistency of Dr. Fishburn's objective findings with his assessed walking limitation,

the ALJ nonetheless found that Dr. Fishburn's assessment was unpersuasive explaining it was

internally inconsistent with his own findings that Mr. Beaty could ambulate without difficulty.

*Id.*  Mr. Beaty contends that the ALJ's explanation for rejecting Dr. Fishburn's assessment is not

supported by the evidence and that the ALJ failed to provide a legally supported explanation for

doing so.  *Id.*

The Commissioner disagrees and asserts that the ALJ's finding that Mr. Beaty could

perform medium level work is supported by substantial evidence.  Doc. 31 at 11-12.  The

Commissioner explains that the ALJ properly considered all of the opinion evidence, fulfilled his

duty to resolve conflicting evidence, and fashioned an RFC "somewhere in the middle" to the

benefit of Mr. Beaty.  *Id.*

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to

which the opinion is supported by objective medical evidence and supporting explanation;

(2) how consistent the opinion is with other evidence in the record; (3) the source's treating

relationship with the claimant (i.e., how long/frequently the source treated the claimant and for

what purpose); (4) whether the source was specialized on the impairment on which he or she is

opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §

404.1520c(c)(1)-(5). The most important factors are "supportability ... and consistency." 20

C.F.R. § 404.1520c(a). The SSA does not give "any specific weight, including controlling

weight, to any medical opinion(s)." *Id.*

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight

he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The ALJ is not

required to discuss each factor articulated in the regulations; rather, the ALJ must merely explain

his weighing decision with sufficient specificity so as to be capable of review. *See Langley v.*

*Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Put differently, if an ALJ rejects an opinion, he

"must then give 'specific, legitimate reasons for doing so.' " *Id.* (quoting *Watkins v. Barnhart*,

350 F.3d 1297, 1300 (10th Cir. 2003)).

The Court agrees that the ALJ failed to provide a sufficient legitimate explanation for

rejecting Dr. Fishburn's opinion that Mr. Beaty was limited to frequent walking. This is error. In

his explanation, the ALJ discusses at length that based on Dr. Fishburn's observations and

physical exam Dr. Fishburn indicated that Mr. Beaty ambulated without difficulty, *i.e.,* no

assistive device, normal gait, could walk on his toes and heels. Tr. 26. The ALJ, therefore,

concluded that Dr. Fishburn's exam failed to demonstrate that Mr. Beaty had any difficulties

with walking. *Id.* But the ALJ's duty in assessing exertional capacity is not limited to whether

or not a claimant has the ability to perform a particular strength demand (sitting, standing,

walking, lifting, carrying, pushing and pulling), but also requires the ALJ to address an

individual's limitations and restrictions of each functional strength demand. *See* SSR 96-8P,

1196 WL 374184,at *5. In other words, it is not enough that Mr. Beaty demonstrated an ability

to walk during a physical exam, the ALJ is required to separately assess the evidence regarding

any limitations and restrictions on Mr. Beaty's ability to perform that strength demand in

sustained work activities on a regular and continuing basis. *Id.* at *6. Here, the ALJ focused

solely on how the evidence supported Mr. Beaty's ability to walk and in turn rejected, without a

legitimate explanation, Dr. Fishburn's assessed limitation on Mr. Beaty's ability to walk on a

sustained basis during the course of an eight-hour workday. Moreover, Dr. Fishburn's assessed

limitation was directly linked to and supported by his objective exam findings, *i.e.,* decreased

sensation to vibration and temperature at the right distal hand and the bilateral lower

extremities/feet.[12] Tr. 399. *See* 20 C.F.R. § 404.1520c(c)(1) (explaining that the more relevant

the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion the more persuasive the medical opinion will be); *Carpenter*

*v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted) ("It is improper for the ALJ

to pick and choose among medical reports, using portions of evidence favorable to his position

while ignoring other evidence."); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)

(explaining that an ALJ may not "mischaracterize or downplay evidence to support h[is]

findings").

Further, the Court is not persuaded that the ALJ fulfilled his duty to resolve conflicting

medical evidence and fashioned an RFC "somewhere in the middle" between the nonexamining

State agency medical consultant's determination that Mr. Beaty's alleged physical impairments

were nonsevere and Dr. Fishburn's assessed limitations, as the Commissioner argues. Doc. 31 at

11-12. To begin, the ALJ found the nonexamining State agency medical consultant

determinations of non-severe impairments *unpersuasive* given the "longitudinal record of

---

[12] On November 8, 2017, CNP Ochoa similarly noted on physical exam that Mr. Beaty had an abnormal Monofilament Exam and that his vibratory sense on both feet was impaired. Tr. 410.

evidence reflecting the claimant regularly reported symptoms associated with [] impairments."[13]
Tr. 26.  Indeed, the ALJ determined at step two that Mr. Beaty had severe physical impairments
of hypertension, diabetes, mild arthritis of the hips, and COPD.  Tr. 18.  That aside, the ALJ does
not provide this explanation in his determination as a basis for rejecting Dr. Fishburn's assessed
limitation of Mr. Beaty's ability to walk on a sustained basis in an eight-hour workday.  As such,
the Commissioner's argument amounts to post-hoc rationalization which this Court may not
adopt.  *See Haga,* 482 F.3d at 1207-08 ("this court may not create or adopt post-hoc
rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision
itself.").

Significantly, however, the nonexamining State agency medical consultants, having
determined that Mr. Beaty's physical impairments were non-severe, did not complete RFC
assessments regarding Mr. Beaty's ability to do work-related physical activities.  As such,
Dr. Fishburn's opinion was the *only* opinion evidence in the record with respect to Mr. Beaty's
ability to do work-related physical activities such that there was no conflicting medical opinion
evidence to resolve related to Mr. Beaty's ability to do work-related physical activities.  *See
Haga v. Astrue*, 482 F.3d 1205, 1028 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose
through an *uncontradicted* medical opinion, taking only the parts that are favorable to a finding
of nondisability.") (emphasis added).  Thus, it is simply unexplained why the ALJ failed to adopt
Dr. Fishburn's assessed limitation that Mr. Beaty could only walk frequently in an eight-hour
workday.

---

[13] The ALJ explained that in accounting for Mr. Beaty's periods of exacerbated symptomatology, he found the combined nature of Mr. Beaty's physical impairments, *i.e.,* COPD, hypertension, diabetes, and osteoarthritis of the hip merited a medium exertional level.  Tr. 26.

In sum, the Court finds that the ALJ erred in failing to provide an explanation supported by substantial evidence for rejecting Dr. Fishburn's uncontradicted opinion regarding Mr. Beaty's ability to walk on a sustained basis in an eight-hour workday.  This is error.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (the record must demonstrate that the ALJ considered all of the evidence and must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects).  Further, because the ALJ failed to provide an adequate discussion describing how the evidence supports his consideration of Dr. Fishburn's opinion, the Court concludes that the RFC is not supported by substantial evidence.  *Southard*, 72 F App'x at 784-85.

### D. Remaining Issues

The Court will not address Mr. Beaty's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV.  Conclusion

For the reasons stated above, Mr. Beaty's Motion to Reverse or Remand Administrative Agency Decision (Doc. 27) is **GRANTED.**

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**